**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LATANYA L. MCNEAL,

                Plaintiff,

vs.                                    Case No. 3:11-cv-00498-J-32MCR

DUVAL COUNTY SCHOOL
BOARD, an agency of the
CITY OF JACKSONVILLE,

                Defendant.

_____

## ORDER

      This retaliation case under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797, is before the Court on defendant Duval County School Board's Motion to Dismiss (Doc. 16), and plaintiff LaTanya McNeal's response in opposition (Doc. 17).

**I.**      **Background**

      McNeal filed this action alleging that defendant Duval County School Board ("DCSB") unlawfully retaliated against her in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. According to the Amended Complaint (Doc. 15-1), McNeal was the principal at Southside Middle School (id. at ¶¶ 2, 35).[1]  In February 2010, McNeal hired an attorney to assist in advocating for her handicapped child's rights under Section 504, and on March 3, 2010, her daughter was placed on a 504 plan. (Id. at ¶¶ 11-13.)  McNeal alleges that in

_____

    [1] Although paragraph 2 of the Amended Complaint asserts McNeal is the principal at Southside Middle School (Doc. 15-1 at ¶ 2), paragraph 35 asserts McNeal was not reappointed as principal of Southside Middle School for the 2011-12 school year (id. at ¶ 35).

a meeting on March 5, 2010, her supervisor "chastised and berated" her for how she handled her child's 504 plan and stated that her choice to hire an attorney to assist in the plan was "over the top" and she needed to "back off."  (Id. at ¶ 19.)  McNeal alleges she was scheduled for an interim performance review at the end of February 2010, but she was never contacted regarding that review.  (Id. at ¶ 21.)  According to the Amended Complaint, on September 16, 2010, McNeal received a negative performance evaluation and her supervisor did not recommend her for merit pay. (Id. at ¶ 22.) McNeal's supervisor allegedly told her that the decision not to recommend her for merit pay was based on McNeal having hired an attorney to advocate for her daughter's 504 plan.  (Id.)  McNeal alleges that between the beginning of the 2010-2011 school year and March 2011, she was frequently harassed, demeaned, and threatened by her supervisors (id. at ¶¶ 24, 42), she received poor financial audits of her school (id. at ¶ 25), and she was prevented from engaging in training and traveling opportunities (id. at ¶ 26).  On March 1, 2011, McNeal filed a complaint with DCSB's Office of Equity and Inclusion (id. at ¶ 28.), and on March 11, 2011, McNeal received a second negative performance evaluation and was put on a "success plan" (id. at ¶¶ 29-31).

McNeal claims DCSB's actions toward her were in retaliation for advocating for her daughter's Section 504 rights.  (Id. at ¶¶ 40, 42.)  As a result, on April 6, 2011, McNeal requested that DCSB provide an administrative hearing before the Florida Division of Administrative Hearings.  (Id. at ¶ 7.)  On May 3, 2011, DCSB denied her request.  (Id. at ¶ 8.)  Due to the denial of the hearing and in belief that she had exhausted her administrative remedies (id. at ¶¶ 7-9), on May 18, 2011, McNeal filed the present action (id. at ¶ 33).

2

Ultimately, on June 30, 2011, DCSB demoted McNeal from principal of Southside Middle School to assistant principal of a different middle school, resulting in a reduction in pay of approximately $33,000.  (Id. at ¶¶ 35-37.)

## II.     **Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff, construing the allegations in the light most favorable to the plaintiff. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006) (citing Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003)).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."  Twombly, 550 U.S. at 555 (citations omitted).  In its inquiry, the reviewing court must "draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

## III.    **Discussion**

First, DCSB argues McNeal failed to allege a retaliation claim under Section 504. Second, DCSB argues McNeal failed to properly exhaust her administrative remedies in accordance with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415,

prior to filing her Section 504 lawsuit.  The Court addresses these two arguments separately.

### A.    Retaliation Claim

McNeal's retaliation claim under Section 504 is atypical.  McNeal does not allege her child was discriminated or retaliated against, nor that she was dissatisfied with her child's Section 504 plan.  Instead, McNeal asserts DCSB retaliated against her, in violation of the Rehabilitation Act, for advocating for her handicapped child's rights.

The Rehabilitation Act does not specifically provide an anti-retaliation provision. However, the Eleventh Circuit in Albra v. City of Fort Lauderdale, provided that "[t]he anti-discrimination provision of the Rehabilitation Act incorporates the anti-retaliation provision of the [Americans with Disabilities Act ("ADA")]."  232 F. App'x 885, 891 (11th Cir. 2007) (citing 29 U.S.C. § 794(a), (d); 42 U.S.C. § 12203(a)).  Thus, "the *prima facie* case for retaliation under the Rehabilitation Act is the same as that under the ADA."  Id. at 891 (citing Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1526 n.2 (11th Cir. 1997)).  Moreover, because the ADA retaliation provision is similar to that of Title VII, retaliation claims filed under the Rehabilitation Act are assessed under the same framework as Title VII retaliation claims.  Shannon v. Postmaster Gen. of U.S. Postal Serv., 335 F. App'x 21, 26 (11th Cir. 2009); Wilbourne v. Forsyth Cnty. Sch. Dist., 306 F. App'x 473, 475 (11th Cir. 2009). Accordingly, to establish a prima facie case for retaliation under the Rehabilitation Act, McNeal must show "(1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action."  Wilbourne, 306 F. App'x at 475 (internal marks omitted) (citing Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998)).

4

McNeal has pled sufficient facts to infer she engaged in a statutorily protected activity under the Rehabilitation Act.  McNeal asserted that her daughter had a disability and pursuant to 29 U.S.C. § 794(a), was entitled to a Section 504 plan.  The ADA's retaliation provision, which is incorporated into the Rehabilitation Act, provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of . . . her *having aided or encouraged* any other individual in the exercise or enjoyment of, any right granted or protected by [the Act]."  42 U.S.C. § 12203(b) (emphasis added).  McNeal alleges she advocated on behalf of her child for the school to provide her child with a Section 504 plan based on the child's disability, a statutorily protected activity under the Rehabilitation Act.

McNeal also sufficiently pled that she suffered an adverse employment action.  The Eleventh Circuit has held that to sufficiently plead an adverse action, the plaintiff must show a reasonable employee would have found such conduct materially adverse.  Shannon v. Postmaster Gen. of U.S. Postal Serv., 335 F. App'x 21, 26 (11th Cir. 2009) (citation omitted).  Likewise, in analyzing a retaliation claim under Title VII, the United States Supreme Court has held that to demonstrate an adverse action, the plaintiff must show such action taken by her employer "well might have dissuaded a reasonable worker" from engaging in statutorily protected activity.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  Among other things, McNeal asserts she was demoted resulting in a substantial loss of pay, received poor performance reviews, and was denied merit pay and travel and training opportunities.  A reasonable employee could easily find such conduct to be materially adverse.  See Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1448 (11th Cir. 1998) ("Where

5

a plaintiff has allegedly suffered termination, demotion, reduction in pay, loss of prestige, or diminishment of responsibilities . . . the relevant question . . . is whether such patently adverse actions actually took place.").

McNeal has further pled the required causal connection. "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." Shannon, 335 F. App'x at 26 (citation omitted); see also Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) ("[I]n the *absence of other evidence tending to show causation*, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." (emphasis added) (citations omitted)).

The Amended Complaint asserts that during two of the meetings between McNeal and her supervisor, the supervisor allegedly addressed McNeal's hiring of an attorney to assist in advocating for her child's Section 504 rights. (Doc. 15-1 at ¶¶ 19, 22.) The first meeting occurred on March 5, 2010, two days after the 504 plan was implemented. (Id. at ¶ 19.) Although this meeting was not an adverse action, this short time period between the Section 504 activity and the first meeting between McNeal and her supervisor was the first step on the causal connection continuum. The second meeting occurred on September 16, 2010, six months after the 504 plan was implemented. (Id. at ¶ 22.) During the second meeting, where McNeal's supervisor denied her merit pay, McNeal's supervisor allegedly said that the decision to deny her merit pay was a result of McNeal's choice in hiring an attorney to help with her daughter's 504 plan. (Id.) Other adverse actions followed shortly.

6

Although this second meeting occurred six months after McNeal advocated for her daughter's 504 plan, McNeal's supervisor's reference to her advocacy for her child's 504 plan supports the allegation that the loss in merit pay was in response to McNeal's actions in advocating for her child's 504 plan.  This allegation of direct evidence of causation is sufficient to withstand a motion to dismiss and distinguish the case from others where a period of months separate the actions.  Close temporal proximity between the adverse employment action and the protected activity is one common method of establishing a causal connection, but it is not the sole method.  Saridakis v. South Broward Hosp. Dist., 681 F. Supp. 2d 1338, 1355 (S.D. Fla. 2009); Haley v. Potter, No. 2:04-cv-427-MEF, 2005 WL 1618549, at *6 (M.D. Ala. July 6, 2005).  Moreover, a causal connection may appear after a longer period between a protected act and an adverse action where the events were temporally linked by a chain of retaliatory events.  See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456-57 (11th Cir. 1998).  The alleged adverse actions continuously occurred over a period of nineteen months, during which DCSB was aware of McNeal's prior action in advocating for her child's 504 plan.  See Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." (citation omitted)).  Construing the allegations in the Amended Complaint in the light most favorable to McNeal, McNeal has sufficiently pled a claim for unlawful retaliation under the Rehabilitation Act.

### B.    Exhaustion Claim

Although McNeal has pled sufficient facts to state a prima facie claim of retaliation

under the Rehabilitation Act, as a prerequisite to bringing such action, McNeal must have exhausted her administrative remedies. See School Bd. of Lee Cnty., Fla. v. M.M. ex rel. M.M., 348 F. App'x 504, 511 (11th Cir. 2009) (stating in a Rehabilitation Act case, that "[a party must] exhaust administrative remedies by requesting and participating in a due-process hearing . . . ." (citations omitted)). As previously noted, this is not an ordinary dispute concerning a Section 504 plan. Typical disputes under Section 504 deal with a plan's application to a child. See, e.g., L.M.P. ex rel. E.P. v. School Bd. of Broward Cnty., Fla., 516 F. Supp. 2d 1294, 1302 (S.D. Fla. 2007). Because typical disputes about 504 plans are very similar to disputes concerning IEPs, which are governed by IDEA, persons raising disputes regarding Section 504 plans must submit to the same administrative remedies as those persons bringing disputes under IDEA. See M.T.V. v. DeKalb Cnty. Sch. Dist., 446 F.3d 1153, 1158 (11th Cir. 2006). IDEA requires that all persons must have a right to file a complaint relating to, among other things, the evaluation or educational placement of their child. 20 U.S.C. § 1415(b). Within that complaint, the person must set forth an alleged violation. Id. The statute further sets out the procedures required for an impartial due process hearing. See id. § 1415(f). Moreover, IDEA provides that "before the filing of a civil action under [the Rehabilitation Act] seeking relief that is also available under [IDEA], the procedures . . . [of § 1415] shall be exhausted to the same extent as would be required had the action been brought under [§ 1415]." Id. § 1415(l).

### i. Not Seeking Remedies Under IDEA

McNeal asserts that she, and not her child, was retaliated against, and therefore she does not have a cause of action under IDEA. (Doc. 15-1 at ¶ 6, Doc. 17 at 1.) The most

8

relevant case is <u>Babicz v. School Bd. of Broward Cnty.</u>, 135 F.3d 1420 (11th Cir. 1998).  In

<u>Babicz</u>, the plaintiffs, parents acting on behalf of their children, filed an action with the district

court alleging violations of the Rehabilitation Act and the ADA for failure to implement their

children's 504 plans, and for retaliation for hiring an attorney to advocate for the plans.  <u>Id.</u>

at 1421.  The complaint alleged one of the parents was "forced out of her position as PTA

president; was restricted from moving freely within the school, followed sometimes by school

personnel; and was denied a visitor's pass on two occasions . . . ."  <u>Id.</u> at 1421 n.7.  The

Eleventh Circuit held "claims asserted under Section 504 and/or the ADA are subject to

[IDEA's] requirement that litigants exhaust the IDEA's administrative procedures to obtain

relief that is available under the IDEA before bringing suit under Section 504 . . . ."  <u>Id.</u> at

1422 (citations omitted).   In <u>M.T.V. v. DeKalb Cnty. Sch. Dist.</u>, the Eleventh Circuit,

analyzing <u>Babicz</u>, stated there is not a difference between parents' retaliation claims and the

claims based on the students' educational plans; both are subject to IDEA's administrative

procedures.  446 F.3d 1153, 1158 (11th Cir. 2006).

    McNeal argues in her Amended Complaint that she is not seeking relief available

under IDEA, and therefore she is not required to exhaust administrative remedies prior to

bringing this action.  (Doc. 15-1 at ¶ 6.)  However, <u>M.T.V.</u> held differently.  In <u>M.T.V.</u>, the

plaintiffs, parents of a disabled child, alleged retaliation for seeking services under their

child's Individual Education Plan (IEP).  <u>M.T.V.</u>, 446 F.3d at 1155.  The plaintiffs sought relief

under the Rehabilitation Act, arguing IDEA does not give parents a right to file actions for

retaliation against them, not their children, and therefore the relief sought is not available

relief under IDEA. Id. at 1158.[2]   The Eleventh Circuit held the plaintiffs' argument was "inconsistent with both *Babicz* and the plain language of the IDEA." Id. "[A]ny student who wants relief that is available under the IDEA must use the IDEA's administrative system, even if he invokes a different statute." Id. (internal quotation marks omitted) (quoting Babicz, 135 F.3d at 1422 n.10). The court further stated that although the plaintiffs were claiming retaliation against themselves, because the retaliation claim clearly related to the child's evaluation and education, the plaintiffs were required to exhaust administrative remedies. Id. McNeal makes the same argument, namely that she was retaliated against, not her child, and therefore IDEA does not apply to her. Though there is some appeal to McNeal's position, based on Babicz and M.T.V., the Court cannot accept it. The administrative exhaustion requirement still applies because McNeal's retaliation claim stems from advocating for her child's rights to an evaluation and education.

### ii.   Denying an Administrative Hearing

McNeal asserts that even if she was required to exhaust administrative remedies, she satisfied such requirement. (Doc. 15-1 at ¶¶ 7-8, Doc. 17 at 12-15.) The Amended Complaint alleges that McNeal requested an administrative hearing and DCSB denied the request. (Doc. 15-1 at ¶¶ 7-8.) McNeal provides further support in her response, including correspondence between McNeal and DCSB. (See Doc. 17.) This extrinsic evidence

---

[2] The facts of M.T.V. are a bit different than those in the instant case because McNeal's daughter was not on an IEP, which specifically falls within IDEA's grasp; she was on a Section 504 plan. However, the exhaustion requirement for disputes about 504 plans falls under the same framework as IEPs; plaintiffs alleging either type of retaliation claim must exhaust administrative remedies. Compare Babicz, 135 F.3d 1420, with M.T.V., 446 F.3d 1153.

10

directly supports the allegation of the Amended Complaint.  Although a court typically may

not consider information outside of the four corners of the complaint on a motion to dismiss

without converting the motion to one for summary judgment, see Fed. R. Civ. P. 12(d),

because the correspondence is central to McNeal's claim that she exhausted her

administrative remedies, and its authenticity is not challenged, the Court may consider such

information. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (stating that if a document's

contents are alleged in a complaint and no party questions those contents, a court may

consider the document on a motion to dismiss provided that the document is central to the

plaintiff's claim and the authenticity of the documents is undisputed); School Bd. of Manatee

Cnty., Fla. v. L.H. ex rel. D.H., 666 F. Supp. 2d 1285, 1288 (M.D. Fla. 2009) (holding the

court could consider the portion of the administrative record attached to the parents'

response to the school board's motion to dismiss, because that portion was central to the

parents' claims and was undisputed).

In the first letter to DCSB, McNeal stated that she wanted to "exhaust her

administrative remedies in order to meet all conditions precedent to bringing a federal lawsuit

to remedy the damages caused by the retaliatory conduct." (Doc. 17, Ex.1 at 19.)  The letter

further stated "[p]lease accept this as Ms. McNeal's petition for a hearing before an

administrative law judge from the State of Florida Division of Administrative Hearings

(DOAH) . . . ." (Id.)  After further correspondence and telephone conversations (see id., Exs.

2-5 at 20-31), DCSB denied McNeal's request for a hearing (id., Ex. 6 at 33).  In the letter

denying her request, DCSB stated that McNeal's arguments "provide no bases for

administrative proceedings" and that "McNeal's complaints are not calculated to seek

11

  
remedies available under the Constitution or other laws 'protecting the rights of children with disabilities.'" (Id.)  The letter further stated that "the District is unwilling to initiate and undertake the significant expense of any administrative proceedings before DOAH or any other tribunal."  (Id.)  However, in its motion to dismiss, DCSB asserts that it denied McNeal's request for an administrative hearing because McNeal "had not specified the nature of her dispute." (Doc. 16 at 15.)  This is inaccurate.  Exhibit 1 to McNeal's response states to DCSB that she was "retaliat[ed against] for her having engaged in protected activity under Section 504." (Doc. 17, Ex. 1 at 19.)  Further, Exhibit 2 to McNeal's Response provides a letter from DCSB requesting more information from McNeal regarding what type of claim she wished to bring before the DOAH. (Id., Ex. 2 at 21.)  Exhibit 3 to McNeal's Response shows the letter from McNeal to DCSB clarifying her claim for retaliation under Section 504.  (Id., Ex. 3 at 24.)  Based on these three communications, DCSB's argument that McNeal did not specify the nature of her dispute is without merit.  DCSB was aware of the nature of McNeal's dispute and her request for an administrative hearing.  Because McNeal requested and was denied an administrative hearing, the Court must address whether McNeal exhausted her administrative remedies, or was excused from doing so.[3]

One of the fundamental purposes of IDEA's requirement that parties must exhaust administrative remedies is that "the administrative process facilitates the compilation of a fully developed record by a factfinder versed in the educational needs of disabled children- and that record is an invaluable resource for a state or federal court required to adjudicate

---

[3] It appears that pursuant to Florida's administrative procedures, McNeal did not have the ability to directly request a hearing from DOAH; she had to request a hearing from DCSB.

a subsequent civil action covering the same terrain." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 61 (1st Cir. 2002).  The Eleventh Circuit has stated that the "exhaustion rule serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error." Association for Retarded Citizens of Ala., Inc. v. Teague, 830 F.2d 158, 160 (11th Cir. 1987).

Exhaustion is not required where resorting to administrative remedies would be futile or the available relief is inadequate.  N.B. by D.G. v. Alachua Cnty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb Cnty. Sch. Dist., 446 F.3d 1153, 1159 (11th Cir. 2006).  However, it does not appear that the present action neatly aligns with either of these exceptions.  The Eleventh Circuit has not directly spoken on whether the denial of an administrative hearing is enough to waive IDEA's administrative exhaustion requirement, which would otherwise be a prerequisite to bringing this Rehabilitation Act case.  Moreover, Florida Administrative Code section 6A-6.03311(9), which provides the requirements for all due process hearings, fails to provide a required procedure after a school district denies a hearing request.  See Fla. Admin. Code r. 6A-6.03311(9) (2011).[4]

---

[4] Florida Administrative Code section 6A-6.03311(9)(g) addresses denial of a hearing based on insufficiencies in the request, but here DCSB did not allege such insufficiency. See Fla. Admin. Code r. 6A-6.03311(9)(g) (2011) ("A due process hearing request will be deemed sufficient unless the party receiving the due process hearing request notifies the

A federal district court that has addressed this issue, in a case with very similar facts, held that the case should not be dismissed for failure to exhaust administrative remedies after the school district had denied a hearing request. In Thompson v. Board of Special Sch. Dist. No. 1, a former student sought a hearing to challenge the education the school district provided him while he was enrolled. 936 F. Supp. 644, 646 (D. Minn. 1996). The school district denied the request on the grounds that the district did not have an obligation to provide a hearing because Thompson was no longer in the school district. Id. Thompson filed suit alleging, among other things, a violation of the Rehabilitation Act. Id. The school district moved to dismiss, arguing Thompson failed to exhaust his administrative remedies before bringing suit. Id. at 648. In holding that Thompson's complaint could not be dismissed for failure to exhaust his administrative remedies, the court stated "[i]t is nonsensical for [the school district] to try and maintain that Thompson must have a hearing on his claims before he can initiate a suit and at the same time insist that Thompson has no right to a hearing." Id. The court further noted that "[i]t would be futile to require Thompson to request a hearing on his race and disability discrimination claims only to be denied a hearing. Exhaustion is not required when it would be futile to use the due process procedures." Id.

In another similar case, a federal district court denied a motion to dismiss for failure

---

administrative law judge (ALJ) and the other party in writing, within fifteen (15) days of receipt of the due process hearing request, that the receiving party believes the due process hearing request does not meet the requirements . . . .). Florida Administrative Code section 6A-6.03311(9)(I) further requires the school district notify the parent why a due process hearing request was denied. See r. 6A-6.03311(9)(i). However, no section of the code specifically provides what is required after the school district denies a request for a hearing.

14

to exhaust administrative remedies after a school district denied a parent the opportunity to seek administrative remedies.  See Fauconier v. Committee of Special Ed., No. 02CIV.1050, 2002 WL 31235786 (S.D.N.Y. Oct. 2, 2002).  In Fauconier, the father of a child with ADHD complained to the school district multiple times requesting evaluation of his son.  Id. at *1-2.  The school district informed him that because he was not the custodial parent of his child, he did not have a say in his child's educational placement.  Id. at *1.  Instead of referring Fauconier to a hearing officer, the district referred him to his ex-wife.  Id. at *2.  Fauconier filed a pro se complaint with the district court and the school district moved to dismiss, arguing Fauconier failed to exhaust his administrative remedies.  Id. at *2.  The court stated "it is difficult to command Fauconier to exhaust all administrative remedies when the gatekeepers of those remedies have denied him access."  Id. at *4.  In denying the school district's motion, the court held that Fauconier could not "be penalized for not exhausting administrative remedies when he was effectively denied the opportunity to seek such remedies."  Id. at *4.

        Both Thompson's and Fauconier's rationales apply to the present situation.  McNeal did try to avail herself of the available administrative remedies and was rebuffed by DCSB.  One of the purposes of exhausting administrative remedies is to try to resolve a dispute before resorting to litigation.  See Association for Retarded Citizens of Ala., Inc. v. Teague, 830 F.2d 158, 160 (11th Cir. 1987).  Another is to allow the agency to exercise discretion and apply its expertise on the issue.  Id.  However, because DCSB denied McNeal's request for a due process hearing and because, in any event, this retaliation claim is dissimilar from most actions brought pursuant to a Section 504 plan, neither of these purposes apply.

15

Construing the allegations in the Amended Complaint in a light most favorable to McNeal, the Court finds that McNeal either exhausted her administrative remedies or was excused from the exhaustion requirement based on DCSB's denial of her hearing request.  Thus, McNeal has sufficiently pleaded a retaliation claim under the Rehabilitation Act.

Accordingly, it is hereby

**ORDERED**:

Defendant's Motion to Dismiss (Doc. 16) is **DENIED**.  No later than **December 22, 2011**, Defendant shall answer the Amended Complaint.

**DONE AND ORDERED** at Jacksonville, Florida this 1st day of December, 2011.

_____
TIMOTHY J. CORRIGAN
United States District Judge

ah.
Copies:

counsel of record